KM

WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Tony Deng,

Plaintiff,

v.

Unknown Henry, et al.,

Defendants.

No.    CV-25-01554-PHX-JAT (JFM)

**ORDER**

Self-represented Plaintiff Tony Deng, who is confined in the Arizona State Prison Complex- Lewis, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and paid the filing and administrative fees.  The Court will order Defendants Barnes and NaphCare to answer Counts One and Two of the Complaint; give Plaintiff 120 days to discover the identity of Defendant Jane Doe; and will dismiss the remaining claims and Defendants without prejudice.

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

TERMPSREF

1    A pleading must contain a "short and plain statement of the claim *showing* that the

2   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does

3   not demand detailed factual allegations, "it demands more than an unadorned, the-

4   defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

5   (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere

6   conclusory statements, do not suffice." *Id.*

7    "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

8   claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*,

9   550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content

10   that allows the court to draw the reasonable inference that the defendant is liable for the

11   misconduct alleged." *Id.*  "Determining whether a complaint states a plausible claim for

12   relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

13   experience and common sense." *Id.* at 679.  Thus, although a plaintiff's specific factual

14   allegations may be consistent with a constitutional claim, a court must assess whether there

15   are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

16    But as the United States Court of Appeals for the Ninth Circuit has instructed, courts

17   must "continue to construe [self-represented litigant's] filings liberally." *Hebbe v. Pliler*,

18   627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a self-represented prisoner]

19   'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.*

20   (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

21   **II.    Complaint**

22    In his three-count Complaint, Plaintiff names the following Defendants: Deputy

23   Warden Henry, Correctional Officer (CO) IV Rocky Sutton, CO II Barnes, Night Shift

24   Commander or Supervisor Jane Doe, CO IV Larson, CO III Gilbert, NaphCare, Inc., and

25   Nurse Practitioner Coronado.  Plaintiff seeks monetary damages.

26    In Count One, Plaintiff alleges his Eighth Amendment right to adequate medical

27   care was violated from August 2022 to May 2023, when he was denied a full meal after

28   receiving his morning insulin treatments.  Plaintiff is an insulin dependent diabetic and

TERMPSREF

- 2 -

1    receives a daily insulin treatment around 4:30 or 5:00 a.m.  To prevent hypoglycemia,

2    Plaintiff must eat his morning meal immediately after the insulin treatment.  This occurred

3    up until July 2022, when the kitchen was closed for repair and diabetic prisoners were

4    given a snack instead of a full meal.  After the kitchen reopened in August 2022, Plaintiff

5    and other diabetic prisoners continued to receive a snack instead of the morning meal,

6    which Plaintiff claims "is very bad for diabetics." (Doc. 1 at 5.)  The snack consisted of

7    two pieces of bread and small bag of peanut butter.  Diabetic prisoners like Plaintiff were

8    "forced to wait up to 2.5 to 3 hours before eating their normal morning meal after their

9    insulin treatment." (*Id.*)

10    On August 27, 2022, Plaintiff submitted an informal complaint about the new

11    procedure and explained it could cause hypoglycemic events.  Plaintiff's informal

12    complaint was not answered.

13    On September 21, 2022, Plaintiff submitted a formal grievance complaining that the

14    new feeding procedure "severely affected his ability to adequately manage his glucose

15    level," caused him to "fall out many times," and was inappropriately implemented by non-

16    medical security officers. (*Id.*)  Plaintiff asked that diabetic inmates be allowed to take

17    their morning meal and go to "early chow" if needed, immediately after receiving insulin

18    treatments. (*Id.* at 6.)  Defendant Sutton responded that "Cook Unit is not currently looking

19    to review current chow hall turnouts and feeding procedures." (*Id.*)  Plaintiff contends "the

20    administration deliberately avoided this issue and did not address it squarely." (*Id.*)

21    On October 3, 2022, Plaintiff filed a grievance appeal.  Plaintiff's appeal was

22    received and signed by a CO II, but never "arrived at its appropriate final destination."

23    (*Id.*) Defendant Gilbert told Plaintiff there was no record of the appeal being filed.  Plaintiff

24    contends "the administration deliberately avoided the issues by not filing [Plaintiff's]

25    appeal." (*Id.*)

26    On October 15, 2022, Plaintiff and other inmates talked to Defendant Barnes about

27    the issue and Barnes stated, "we are not doing early chow for insulin diabetics because you

28    guys complained to medical crying about not being fed." (*Id.*)  On January 10, 2023,

1    Plaintiff and other inmates again asked Defendant Barnes why insulin dependent diabetics

2    are not allowed to eat after their insulin treatments while inmates who are not diabetics,

3    but have early jobs or classes, are allowed to eat, and Barnes responded, "because one of

4    you guys got caught double dipping (eating twice)." (*Id.*)  On April 7, 2023, Plaintiff and

5    others asked Defendant Barnes to talk to a sergeant about the issue.  Barnes "got angry"

6    and told an inmate to "get the fuck out of here, Sergeant is busy he does not have time to

7    talk to you about this." (*Id.*)

8            On April 19, 2023, Plaintiff submitted another informal complaint, citing the

9    permanent injunction in *Jensen v. Thornell*, which, according to Plaintiff, requires regular

10   insulin be administered within 30 minutes of serving a meal and fast-acting insulin be

11   administered within 15 minutes of serving a meal.  In a May 10, 2023 response, non-party

12   Captain Brewer stated, "the matter has been investigated and the process in place currently

13   is to have all inmates who receive insulin immediately escorted to the dining hall to eat

14   their first meal of the day." (*Id.* at 7.)  However, on May 12, 2023, Defendant Barnes

15   denied Plaintiff a "proper meal" after his insulin treatment.  Instead, Plaintiff was given a

16   small bag of peanut butter and two pieces of bread.  When Plaintiff showed Defendant

17   Barnes Captain Brewer's response to the informal complaint, Barnes read it and handed it

18   to commander or shift supervisor Defendant Jane Doe who said, "we don't do early chow

19   for insulin diabetics, this is coming from the DW, the Captain does not know the

20   procedure." (*Id.*)  Defendants Barnes and Doe "refused to honor the resolution, refused to

21   follow the directive and refuse[d] to accommodate the medical needs of [Plaintiff] and

22   other diabetics." (*Id.*)

23           On May 15, 2023, Plaintiff filed another grievance on the issue, which he states

24   "was finally redressed on 5/16/2023, over 9 months later." (*Id.*)  On June 7, 2023,

25   Defendant Sutton responded to Plaintiff's grievance by stating that Captain Brewer's

26   resolution "is affirmed and all shifts have received notice of the insulin feeding process."

27   (*Id.*)

28

1      Plaintiff contends Defendants Barnes and Doe "are responsible for this violation

2   because they knew diabetics need to eat following their insulin treatment" and that the meal

3   timing must be coordinated with insulin administration; knew that eating after insulin

4   treatment is a medical need because they had been escorting diabetic inmates to the dining

5   hall after insulin treatments up until July 2022; but deliberately "defied the procedure and

6   deprived insulin dependent diabetics including [Plaintiff] of a much needed proper meal

7   after their morning treatment for over 9 months." (*Id.* at 7-8.)  Plaintiff asserts Defendants

8   Henry and Sutton are responsible because they knew about the issue but "deliberately

9   avoided looking into it and resolv[ing] it." (*Id.* at 8.)

10      As his injury, Plaintiff alleges his "A1C [was] above 9.0 from August to December

11   2022 and still above 8 in February 2023, after his insulin dosage [was] increased three

12   times." (*Id.* at 15.)  Plaintiff claims a high A1C significantly increases his chance of heart

13   attack, stroke, and kidney failure. (*Id.*)

14      In **Count Two**, Plaintiff claims Defendants NaphCare and Coronado violated his

15   Eighth Amendment right to adequate healthcare.  Plaintiff states he is an insulin dependent

16   diabetic with multiple diagnosed chronic pain conditions and has been placed in chronic

17   care since 2015.  On October 27, 2024, Plaintiff submitted a Health Needs Request (HNR),

18   requesting the pain medication Meloxicam for his back pain.  He did not receive a response.

19   On November 3, 2024, Plaintiff submitted another HNR inquiring about the October 27

20   request and was told he was scheduled to see a provider.  Two months passed and Plaintiff

21   was not seen, nor was he provided any pain medication.

22      On January 7, 2025, Plaintiff submitted another HNR requesting an appointment

23   with a medical provider because he was experiencing severe pain in his left hand "in

24   addition to other chronic pain conditions." (*Id.* at 9.)  Plaintiff was told he was scheduled

25   to see the provider but not given a specific date.  On January 12, 2025, Plaintiff submitted

26   another HNR "pleading that . . . if you can't get me in to see a provider please renew my

27   Meloxicam so I can have some temporary relief." (*Id.*)  Plaintiff's request was never

28   answered and he was not given pain medication.

1    On January 20, 2025, Plaintiff filed an informal grievance.  A February 11, 2025

2    response stated, "only staff that can review medication order[s] or prescription is a provider

3    live staff member." (*Id.* at 10.)  Plaintiff claims the response did not give a reason for the

4    delay and did not inform Plaintiff what corrective action would be taken.  Plaintiff received

5    pain medication on January 27, 2025, three months after his initial request.

6    Plaintiff alleges Defendant Coronado knew Plaintiff has chronic pain conditions and

7    that  he had a prescription for Meloxicam but failed to timely renew his prescription.

8    Plaintiff asserts the "unreasonable delay" caused him "to suffer from severe pain without

9    relief from 10/27/2024 to 1/27/2025 (90 days)." (*Id.*)

10    Plaintiff claims he was again denied pain medication in a second incident.  On

11    February 20, 2025 and March 23, 2025, Plaintiff submitted HNRs requesting Meloxicam

12    for pain relief "due to severe pain in his hand, lower back, sciatic nerves and neuropathy

13    on his feet." (*Id.*)  The HNRs were answered, but Plaintiff was not given medication.  On

14    March 27, 2025, Plaintiff submitted another HNR, "pleading to have his refill of

15    Meloxicam . . . expedited [and] stating that he has been suffering from severe pain without

16    relief for over a month" and "needed something to subdue the pain so that he could function

17    in his daily activities." (*Id.*)  Plaintiff was told his requests were sent to the provider, but

18    he did not receive medications.

19    On March 31, 2025, Plaintiff filed an informal complaint.  Plaintiff alleges

20    "NaphCare administration refused to process the complaint stating that it was a duplicate

21    issue." (*Id.*)  On April 22, 2025, Plaintiff "moved to file a formal grievance" and argued

22    "that the reason he [kept] complaining about the same issue [was] because the issue [had]

23    never been resolved and [was] ongoing," and Plaintiff had been suffering from severe pain

24    for over a month. (*Id.* at 11.)  Plaintiff's grievance was not processed.  Plaintiff received

25    pain medication on March 31, 2025, "which was 41 days later." (*Id.*)

26    Plaintiff asserts Defendant Coronado's failure to timely renew his pain medication

27    "constitutes deliberate indifference to his health needs because she knew Plaintiff is a

28    chronic care patient, an insulin dependent diabetic with multiple chronic conditions

TERMPSREF
- 6 -

1  including chronic pains," and had been informed through multiple HNRs of Plaintiff's need

2  for pain medication, but "failed to renew his prescription in a timely fashion." (*Id.*)

3  Plaintiff was "forced to suffer[] from severe pain without relief on two unreasonably long

4  periods of time" and during these times he "could not participate or function in his daily

5  activities due to severe chronic pains in his hands, lower back, sciatic nerve and neuropathy

6  on his feet due to being a diabetic." (*Id.*)

7        Plaintiff contends Defendant NaphCare was also responsible "because it failed to

8  provide adequate medical staffing, training, and failed to establish an adequate procedure

9  for renewing medication especially for chronic care patients." (*Id.*) Plaintiff alleges that

10  despite his multiple requests and complaints, "NaphCare administration refused to address

11  the issue and refused to [take] corrective actions." Plaintiff claims the injunction portal

12  "will show that many of NaphCare's practices are below the standards set forth in the

13  permanent injunction issued . . . [in] *Jensen v. Thornell*, CV-12-00601-PHX-ROS." (*Id.* at

14  12.) Plaintiff concludes, "ultimately, the excessive and unreasonable delays in this case

15  were the result of NaphCare and its employee [Defendant] Coronado's deliberate

16  indifference to Plaintiff's medical needs." (*Id.*)

17        As his injury, Plaintiff alleges he was forced to endure severe pain without

18  medication for a 90-day period and a second, 41-day period. Plaintiff could not function

19  or participate in daily activities, lost sleep due to severe pain, and suffered from emotional

20  stress and depression. Plaintiff also "had no appetite, [felt] lethargic just from walking to

21  and from the chow hall to his dorm" and exercise "was completely out of the question."

22  (*Id.* at 15.)

23        In **Count Three**, Plaintiff alleges his Eighth Amendment right to humane living

24  conditions was violated. Plaintiff claims that from 2020 to 2023, he was housed with 46

25  other inmates in a 504 square foot dormitory that was designed to house 24 people.

26  According to Plaintiff, the dormitory had no windows and inadequate ventilation because

27  none of the exhaust fans worked. During the pandemic up to May 19, 2023, the "yard

28  [was] a locked down yard" meaning "all of the doors of the building [were] closed and

1  locked over 20 hours a day." (*Id.* at 13.)  Plaintiff asserts that because of inadequate

2  ventilation, if one person got sick, everyone in the in dormitory got sick.  Plaintiff alleges

3  "inmates have been sick over and over again suffering from flu[-]like symptoms" and there

4  "could be a fire hazard with the doors locked all the time with short staff on duty." (*Id.*)

5  Plaintiff claims the air quality was poor "because the vents and the air conduit have never

6  been cleaned and inspected and black spots are visible around the vents on the ceiling . . .

7  the air inside the dorms always smell[s] stale, musty and swamp like." (*Id.*)

8       On February 20, 2023, Plaintiff filed an informal complaint about the poor air

9  quality due to inadequate ventilation and air flow.  In a February 23, 2023 response,

10  Defendant Sutton stated, "your dorm is up to date on all proper service that is provided and

11  scheduled," but did not address any of Plaintiff's health concerns.  On March 15, 2023,

12  Plaintiff filed a formal grievance about overcrowding, the lack of windows, and poor air

13  circulation due to always-closed doors.  Plaintiff stated that when he is inside, he

14  experiences sneezing, an itchy nose, and feels lethargic.  Plaintiff also raised concerns

15  about the possibility of mold in the air vents.

16       On April 7, 2023, Defendant Larson responded to Plaintiff's grievances by stating,

17  "building front doors will not be left open for security reasons and your individual runs do

18  have windows." (*Id.* at 14.)  Plaintiff contends that had Larson investigated and "actually

19  come inside the runs and checked," she would have known the runs had no windows.  On

20  April 10, 2023, Plaintiff submitted an appeal.  The appeal was received and signed by a

21  CO III Gilbert, but was never answered.  Plaintiff asserts "there is a good chance that it

22  was never filed because [Plaintiff] was told by CO III Gilbert that this case was closed."

23  Plaintiff claims two of his grievance appeals have been "deliberately blocked from going

24  up to the director's level." (*Id.*)

25       On May 21, 2023, Plaintiff activated a medical Incident Command System (ICS)

26  because he was coughing up blood.  Plaintiff had had a similar incident on December 15,

27  2022, and believed "polluted air might have been the cause of the infection, but no

28  investigation had been conducted." (*Id.*)

1      Plaintiff contends "the Cook Unit administration did not investigate and see why

2   inmates kept getting sick over and over, and whether there is mold inside the air conduit

3   causing inmates to get sick." (*Id.*) Plaintiff asserts Defendants Larson, Sutton, and Gilbert

4   are responsible "because of their deliberate indifference to [Plaintiff's] health and safety

5   and their refusal to investigate and resolve the issues raised by [Plaintiff]." (*Id.*)

6      As his injury, Plaintiff claims he was forced to "live in a condition that is below

7   constitutional standard[s] for over three years at the Cook Unit." (*Id.* at 15.) He claims the

8   "overcrowded living conditions exacerbated by poor air quality . . . caused [him] to suffer

9   from flu like symptoms constantly and cough[] up blood on multiple occasions." (*Id.*)

10  **III.    Failure to State a Claim**

11      **A.    Medical Claims – Counts One and Two**

12      To state a § 1983 medical claim, a plaintiff must show (1) a "serious medical need"

13  by demonstrating that failure to treat the condition could result in further significant injury

14  or the unnecessary and wanton infliction of pain and (2) the defendant's response was

15  deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

16      "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d

17  1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both

18  know of and disregard an excessive risk to inmate health; "the official must both be aware

19  of facts from which the inference could be drawn that a substantial risk of serious harm

20  exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

21  Deliberate indifference in the medical context may be shown by a purposeful act or failure

22  to respond to a prisoner's pain or possible medical need and harm caused by the

23  indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a

24  prison official intentionally denies, delays, or interferes with medical treatment or by the

25  way prison doctors respond to the prisoner's medical needs. *Estelle v. Gamble*, 429 U.S.

26  97, 104-05 (1976); *Jett*, 439 F.3d at 1096.

27      Deliberate indifference is a higher standard than negligence or lack of ordinary due

28  care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross

1  negligence will constitute deliberate indifference." *Clement v. Cal. Dep't of Corr.*, 220 F.

2  Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458,

3  460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice"

4  do not support a claim under § 1983). "A difference of opinion does not amount to

5  deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d

6  240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to

7  state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of*

8  *State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be

9  substantial. The action must rise to a level of "unnecessary and wanton infliction of pain."

10  *Estelle*, 429 U.S. at 105.

11  **1.   Count One - Defendants Sutton, Henry, and Gilbert**

12  In Count One, Plaintiff alleges Defendants Sutton and Henry are liable because they

13  were aware of the meal issue but failed to "look[] into it and resolve it." Plaintiff also

14  claims Defendant Sutton responded to Plaintiff's September 2022 grievance by stating that

15  meal procedures were not being reviewed and that Defendant Gilbert informed him there

16  was no record of one of his grievance appeals being filed. These allegations are insufficient

17  to demonstrate these Defendants were deliberately indifferent to Plaintiff's serious medical

18  needs. The Court will dismiss Defendants Sutton, Henry, and Gilbert from Count One.

19  **2.   Count Two – Defendant Coronado**

20  In Count Two, Plaintiff alleges Defendant Coronado failed to timely renew Plaintiff

21  pain medication prescription. This allegation suggests, at most, that Defendant Coronado

22  may have been negligent with regard to prescription ordering, but negligence is insufficient

23  to state an Eighth Amendment claim. *See Broughton*, 622 F.2d at 460 (mere claims of

24  "indifference," "negligence," or "medical malpractice" do not support a claim under

25  § 1983). Accordingly, the Court will dismiss Defendant Coronado.

26  **B.   Count Three**

27  As with medical claims, to state an Eighth Amendment conditions-of-confinement

28  claim, plaintiffs must meet a two-part test. "First, the deprivation alleged must be,

1   objectively, sufficiently serious" such that the "official's act or omission must result in the

2   denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834

3   (internal quotations omitted).  Second, the prison official must have a "sufficiently culpable

4   state of mind," i.e., he must act with "deliberate indifference to inmate health or safety."

5   *Id.* (internal quotations omitted).   Deliberate indifference is a higher standard than

6   negligence or lack of ordinary due care for the prisoner's safety.  *Id.* at 835.  In defining

7   "deliberate indifference" in this context, the Supreme Court has imposed a subjective test:

8   "the official must both be aware of facts from which the inference could be drawn that a

9   substantial risk of serious harm exists, *and* he must also draw the inference."  *Id.* at 837

10  (emphasis added).

11       In Count Three, Plaintiff alleges he was housed for three years in the Cook Unit

12  where there is poor ventilation and possible mold.  Plaintiff believes the conditions caused

13  him to experience flu-like symptoms and to cough up blood on two occasions.  Plaintiff's

14  claims are speculative at best; Plaintiff offers no facts connecting his injures to black mold

15  exposure or inadequate ventilation.  The Court will therefore dismiss Count Three.

16  **IV.     Claims for Which an Answer Will be Required**

17       Liberally construed, Plaintiff has adequately stated Eight Amendment medical

18  claims against Defendants Barnes and Doe in Count One and against Defendant NaphCare

19  in Count Two.  The Court will require Defendant Barnes to answer Count One, in his

20  individual capacity, and Defendant NaphCare to answer Count Two.

21       Although Plaintiff has stated a claim against Defendant Doe, the Court will not

22  require service on Defendant Doe at this time because it is, in most instances, impossible

23  for the United States Marshal or his designee to serve a summons and complaint upon an

24  anonymous defendant.  However, the Court will not dismiss the claim against Defendant

25  Doe at this time.

26       The Ninth Circuit has held that where identity is unknown prior to the filing of a

27  complaint, the plaintiff should be given an opportunity through discovery to identify the

28  unknown defendants, unless it is clear that discovery would not uncover the identities, or

1    that the complaint would be dismissed on other grounds. *Wakefield v. Thompson*, 177 F.3d

2    1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).

3    The Court will allow Plaintiff 120 days in which to discover the actual name of Defendant

4    Doe, through subpoena or otherwise, and to substitute the Defendant's actual name by

5    filing a "notice of substitution." *See Wakefield*, 177 F.3d at 1163. The Court may dismiss

6    without prejudice Defendant Doe if Plaintiff fails to timely file a notice of substitution,

7    unless Plaintiff seeks and is granted an extension of time.

8    **V.    Warnings**

9        **A.    Address Changes**

10        Plaintiff must file and serve a notice of a change of address in accordance with Rule

11    83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other

12    relief with a notice of change of address. Failure to comply may result in dismissal of this

13    action.

14        **B.    Copies**

15        Plaintiff must serve Defendants, or counsel if an appearance has been entered, a

16    copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a

17    certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff

18    must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure

19    to comply may result in the filing being stricken without further notice to Plaintiff.

20        **C.    Possible Dismissal**

21        If Plaintiff fails to timely comply with every provision of this Order, including these

22    warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*,

23    963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure

24    to comply with any order of the Court).

25    **IT IS ORDERED:**

26        (1)    Count Three is **dismissed** without prejudice.

27        (2)    Defendants Henry, Sutton, Larson, Gilbert, and Coronado are **dismissed**

28    without prejudice.

(3)     If Plaintiff attempts to amend to address the shortcomings identified in this Order, the amended complaint must be filed on the court-approved form and retyped or rewritten in its entirety (including those claims and Defendants that were not dismissed), and Plaintiff must comply with Rule 15 of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure.

(4)     Within **120 days** from the filing date of this Order, Plaintiff must file a "Notice of Substitution," substituting Defendant Doe's actual name.  The Court may dismiss without prejudice Defendant Doe if Plaintiff fails to timely file a notice of substitution, unless Plaintiff seeks and is granted an extension of time.

(5)     Defendants Barnes must Count One and NaphCare must answer Count Two.

(6)     The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), this Order, and both summons and request for waiver forms for Defendants Barnes and NaphCare.

(7)     Plaintiff must complete[1] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(8)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(9)     The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(10)     The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the

---

[1] If a Defendant is an officer or employee of the Arizona Department of Corrections, Rehabilitation & Reentry, Plaintiff must list the address of the specific institution where the officer or employee works.  Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections, Rehabilitation & Reentry unless the officer or employee works there.

TERMPSREF

1   Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this

2   Order.

3       (11)   A Defendant who agrees to waive service of the Summons and Complaint

4   must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within**

5   **30 days of the date of the notice and request for waiver of service** pursuant to Federal

6   Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

7       (12)   The Marshal must immediately file signed waivers of service of the

8   summons.  If a waiver of service of summons is returned as undeliverable or is not returned

9   by a Defendant within 30 days from the date the request for waiver was sent by the Marshal,

10  the Marshal must:

11          (a)     personally serve copies of the Summons, Complaint, and this Order

12                  upon Defendant pursuant to Rule 4(e)(2) and/or Rule 4(h)(1) of the

13                  Federal Rules of Civil Procedure; and

14          (b)     within 10 days after personal service is effected, file the return of

15                  service for Defendant, along with evidence of the attempt to secure a

16                  waiver of service of the summons and of the costs subsequently

17                  incurred in effecting service upon Defendant.  The costs of service

18                  must be enumerated on the return of service form (USM-285) and

19                  must include the costs incurred by the Marshal for photocopying

20                  additional copies of the Summons, Complaint, or this Order and for

21                  preparing new process receipt and return forms (USM-285), if

22                  required.  Costs of service will be taxed against the personally served

23                  Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil

24                  Procedure, unless otherwise ordered by the Court.

25      (13)   Defendants must answer the Complaint or otherwise respond by appropriate

26  motion within the time provided by the applicable provisions of Rule 12(a) of the Federal

27  Rules of Civil Procedure.

28

TERMPSREF

1   (14)   Any answer or response must state the specific Defendant by name on whose

2   behalf it is filed.  The Court may strike any answer, response, or other motion or paper that

3   does not identify the specific Defendant by name on whose behalf it is filed.

4   (15)   This matter is referred to Magistrate Judge James F. Metcalf pursuant to

5   Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as

6   authorized under 28 U.S.C. § 636(b)(1).

7   Dated this 12th day of September, 2025.

8

9

10

11

_____

James A. Teilborg
Senior United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TERMPSREF